# Illinois Official Reports

## Appellate Court

---

### *Faison v. RTFX, Inc.*, 2014 IL App (1st) 121893

---

| | |
|---|---|
| Appellate Court Caption | TOCCARA FAISON, on Behalf of Herself and Others Similarly Situated, Plaintiff-Appellant, v. RTFX, INC., an Illinois Corporation, Defendant-Appellee (North Star Trust Company, as Trustee Under Trust No. 13189, Defendant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1893 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | November 15, 2013<br><br>January 15, 2014<br>February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action alleging violations of the Chicago Residential Landlord Tenant Ordinance, the appellate court affirmed the dismissal of the counts alleging that defendant failed to tender a summary of the ordinance when plaintiff orally renewed her lease after the initial one-year term expired, that defendant failed to tender notice of building code violations and pending code enforcement litigation, that defendant failed to correct defective, unsafe, and uninhabitable conditions, and that plaintiffs suffered damages as a result of those conditions, but the dismissal of the counts alleging the failure to pay interest on plaintiff's individual security deposit, to tender a receipt for her security deposit payments, and to disclose the name and address of the financial institution where her security deposit was held was reversed and remanded. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-11658; the Hon. Franklin Ulyses Valderrama, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part and reversed and remanded in part. |
| Counsel on Appeal | Berton N. Ring, P.C., of Chicago (Berton N. Ring and Stuart M. Clarke, of counsel), for appellant. |
| | Chuhak & Tecson, P.C., of Chicago (Cary S. Fleischer, of counsel), for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Justices McBride and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Toccara Faison appeals the circuit court's decision to grant defendant RTFX, Inc.'s motion to dismiss pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)) plaintiff's class action complaint in which she alleged violations of several provisions of the Chicago Residential Landlord Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.*), and breach of the implied warranty of habitability.

¶ 2                                    I. BACKGROUND

¶ 3    Plaintiff initially filed a six-count class action complaint on March 28, 2011, against RTFX and North Star Trust Company, as trustee under trust No. 13189, alleging violations of the RLTO and breach of the warranty of habitability under Illinois common law arising out of her tenancy at 2420 North Kedzie Avenue, unit B3, in the City of Chicago. She also moved for class certification. On June 7, 2011, the circuit court entered an order dismissing count III and dismissing North Star Trust Company as a party.[1]

¶ 4    Plaintiff thereafter moved for leave to file an amended class action complaint, which the circuit court granted. In addition, consistent with the claims in her amended complaint, plaintiff filed an amended motion for class certification.

---

[1]North Star Trust is not a party to this appeal.

¶ 5     In the amended five-count complaint, plaintiff alleged that she entered into a one-year lease with defendant on April 4, 2007, in which the lease term ran from April 1, 2007, through March 31, 2008, the monthly rent was $590, and she provided a $590 security deposit. Plaintiff indicated that she paid the security deposit in installment payments, tendering the full amount in approximately June of 2007, but defendant did not provide her with receipts for her payments. She also paid a $40 key deposit on March 29, 2007, and again did not receive a receipt. Plaintiff alleged that after the one-year lease expired, she continued her tenancy on a month-to-month basis by oral agreement. Further, defendant increased her rent by $10 on May 1, 2008, and by $10 again on May 1, 2009. She also alleged that she paid an additional $10 in cash each time the rent was increased as part of her security deposit, but she was not given a receipt for those payments.

¶ 6     Plaintiff claimed that throughout her tenancy, the property contained several unsafe, unsanitary, and uninhabitable conditions, which defendant failed to remedy. Plaintiff alleged the property was cited for 4 code violations on May 4, 2007, and for 32 code violations over the course of her tenancy, and there were two building code administrative proceedings against the property in August and December 2009. Plaintiff alleged that defendant failed to provide her with any notice of these code violations or proceedings, and her attorney submitted a demand for the violations on February 28, 2011, but defendant replied that there were no violations. Plaintiff also alleged that defendant paid her interest on her security deposit in the amount of $1 on January 2, 2010, and $1 on January 29, 2010.

¶ 7     In count I, plaintiff claimed that defendant violated section 5-12-080 of the RLTO (Chicago Municipal Code § 5-12-080 (amended Mar. 31, 2004)) in three ways. First, defendant failed to pay interest on her security deposit at the end of the year-long lease on March 31, 2008, or again on March 31, 2009, in violation of subsection 5-12-080(c) of the RLTO. Second, plaintiff asserted that defendant failed to tender a receipt for her security deposit payments, in violation of subsection 5-12-080(b). Third, plaintiff alleged that defendant never disclosed the name and address of the financial institution where her security deposit was held, in violation of subsection 5-12-080(a)(3) (Chicago Municipal Code § 5-12-080(a)(3) (amended July 28, 2010)). Plaintiff argued that the remedy for violating section 5-12-080 was monetary damages in twice the amount of the security deposit. She also alleged that other tenants suffered the same wrongs.

¶ 8     In count II, plaintiff alleged that defendant never tendered a summary of the RLTO when, as plaintiff alleged, she and defendant orally renewed the lease after the initial one-year term expired, in violation of section 5-12-170 (Chicago Municipal Code § 5-12-170 (amended Oct. 1, 2003)), and the remedy for this violation was a $100 penalty.[2]

¶ 9     In count III, plaintiff alleged that defendant violated subsection 5-12-100(a) of the RLTO (Chicago Municipal Code § 5-12-100(a) (amended Nov. 6, 1991)) by failing to provide

---

[2]We note that, on appeal, plaintiff does not challenge the circuit court's grant of defendant's motion to dismiss as to count II. This issue is therefore waived and we do not address it on appeal. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 221 (1997) (a party waives an issue if he or she fails to raise it on appeal).

notice to her and similarly situated tenants of building code violations or pending code enforcement litigation. Plaintiff alleged that defendant did not provide notice of any code violations occurring within the 12-month period preceding the start of her lease, April 1, 2006, through March 31, 2008. Plaintiff asserted that the remedy was one month's rent or actual damages.

¶ 10    In count IV, plaintiff alleged that defendant violated sections 5-12-070 and 5-12-110 (Chicago Municipal Code §§ 5-12-070, 5-12-110 (eff. Nov. 6, 1991)) by failing to correct defective, unsafe, unsanitary, and uninhabitable conditions at the apartment building during her tenancy, including noninsulated windows, no window screens, no smoke or carbon monoxide detectors, moldy wood, leaking pipes, moldy baseboards, infestation of insects and rodents, cracks in the walls, peeling plaster, faulty electric wiring, a rusted bathroom tub, faulty or broken appliances, and peeling floor tiles. Plaintiff asserted that she and the class members were entitled to damages equal to the difference in the value of the property had it conformed to the RLTO and the value of the nonconforming property.

¶ 11    In count V, plaintiff alleged that defendant's failure to correct the uninhabitable conditions of the property also violated the warranty of habitability implied under Illinois law, and as a result, plaintiff and other class members suffered damages equal to the difference in the market value of their units in the condition delivered and the value of the units had they been delivered as warranted and without defects.

¶ 12    As part of her class action claims, plaintiff alleged the existence of four different classes. Class A consisted of all tenants within the previous two years who provided security deposits but were not paid interest or given receipts. Class B consisted of all tenants who were not given a summary of the RLTO upon entering into or renewing their lease agreement. Class C consisted of all tenants who were not provided notice of code violations or proceedings. Class D consisted of all tenants subjected to habitability violations. Plaintiff alleged that the class number exceeded 52 people, that there were common questions of fact and law which predominated over any individual issues, that plaintiff could fairly and adequately represent the classes' interests, that her counsel was experienced in such matters, and that the identities of the members could be easily determined.

¶ 13    In support of her allegations, plaintiff attached to her amended complaint (1) a copy of her lease, (2) a February 28, 2011, letter from her attorney to Rich Sasak, an officer of RTFX and a manager of the building, and (3) the response letter from Sasak, dated March 16, 2011.[3]

---

[3]In the February 28, 2011, letter from plaintiff's attorney, the attorney requested disclosure of all building code violations, code enforcement proceedings, and the names and addresses of all owners and managers of the building. In the response letter from Sasak, he disclosed the names and addresses of the officers and managers of RTFX, but asserted that there were no code violations or enforcement proceedings against the property. Sasak also related that plaintiff had falsely accused employees of stealing her packages and mail, the building's cleaning person of physically and verbally assaulting her, an individual of entering her apartment and having his dog urinate on her carpet, an individual of spitting on her door, and Sasak of withholding interest on her security deposit. Sasak indicated that

¶ 14   Defendant subsequently moved to dismiss plaintiff's amended complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619.1 (West 2010)). With respect to count I, defendant argued that plaintiff's claims were barred by the applicable two-year statute of limitations because the alleged failure to tender receipts for security deposit payments or pay interest occurred in 2007 and 2008, and any claims regarding conduct occurring before March 28, 2009, were barred.[4] Defendant argued that plaintiff's claim that defendant failed to disclose the name and address of the bank where security deposits were held should be dismissed because the section plaintiff relied on, section 5-12-080(a)(3), was not in effect until after she signed her rental agreement and presented her security deposits. Defendant further asserted that it paid interest in January 2010 and plaintiff never gave written notice that the amount was deficient pursuant to subsections 5-12-080(c) and (f) of the RLTO. Defendant argued that plaintiff could not represent Class A because she had no individual claim.

¶ 15   With respect to count III, defendant argued that the remedy plaintiff requested under subsection 5-12-100(b) did not apply to her subsection (a) claim. Defendant argued that, even if subsection (b) was applicable, plaintiff never provided the required notice specifying the noncompliance; the 2011 letter from her attorney did not constitute a notice as it did not specify a time period or indicate an intent to terminate the lease, and plaintiff never quit the premises. Further, subsection 5-12-100(a) only required notice of code violations within the 12 months before a tenant enters into or renews a lease, which in plaintiff's case would mean from April 4, 2006, to April 4, 2007, but plaintiff cited no violations from that time period. She only cited violations or proceedings on May 4, 2007, and August and December 2009, but she was not entitled to notice of any of these occurrences. Defendant argued that her individual claim and the class claim under count III should be dismissed.

¶ 16   Defendant argued that plaintiff's allegations in counts IV and V were too narrow and particular to support a class action. Defendant also asserted that, pursuant to the terms of the written lease agreement, plaintiff inspected the apartment and approved of its condition before moving in, and she failed to allege that she allowed defendant access to make any repairs. The letter from Sasak attached to her amended complaint indicated that she refused to allow defendant access to her apartment to spray for insects. After her lease expired, she remained in the apartment for four years on a month-to-month basis, and agreed to two increases in rent, and could not now contend that the condition of the apartment was deficient and not worth the rent she paid. She did not allege that the condition of the apartment deteriorated at some point during those four years. Defendant argued that these counts should

investigation of these claims showed that they were baseless, that RTFX would not enter plaintiff's apartment unless she was present because of her concerns about security, and that he gave her the only keys to her mailbox to alleviate her concerns about stolen mail. Sasak asserted that he overpaid her the interest due. Sasak also noted that plaintiff posted "offensive signs" on her door regarding tenants' rights.

[4]See 735 ILCS 5/13-202 (West 2008); *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 14 (2009).

be stricken and her Class D claims could not continue as the allegations were not broad enough to raise a common question of fact or law, they were vague and conclusory, depended on the condition of individual apartments, and plaintiff did not allege that these conditions were consistent or present in other units.

¶ 17        Plaintiff opposed defendant's motion, arguing that even if she could not individually recover under section 5-12-080(a)(3), she could still be a class representative. Regarding her claims involving section 5-12-080(b), plaintiff asserted that she tendered an additional $10 on May 1, 2009, which fell within the two-year statute of limitations. With respect to section 5-12-080(c), plaintiff argued that defendant failed to pay the required interest for the 12-month periods due in March of 2008 and 2009, and that each failure was a separate violation which tolled the limitations period. Plaintiff argued that she timely pursued her claims by bringing suit on March 28, 2011, because defendant failed to pay the interest within 30 days after March 2009. Plaintiff asserted that the lease agreement provided that the lease was renewed for one year (until March 31, 2009) after the initial one-year term ended on March 31, 2008, and the month-to-month tenancy did not commence until April 1, 2009.

¶ 18        With respect to count III, plaintiff maintained that defendant should have disclosed the May 2007 building code violation when plaintiff renewed the rental agreement in March 2008, and that no notice was required, but the letter from her attorney nevertheless constituted notice.

¶ 19        Regarding counts IV and V, plaintiff argued that her allegations were sufficient to state a cause of action and to support a class action because she pled numerous uninhabitable conditions and code violations.

¶ 20        In reply, defendant reiterated that any claim before March 28, 2009, was barred by the statute of limitations, including her claim that defendant failed to provide a receipt for her security deposit in June 2007 and May 2008 and for a key deposit in March 2007, and her claim that defendant failed to pay interest on her security deposit on March 31, 2008. Defendant maintained that under the terms of the lease agreement, the lease was never renewed. Defendant disagreed that the alleged failure to pay interest on her security deposit in 2008 and 2009 tolled the statute of limitations. Defendant reiterated that plaintiff failed to give the required notice under section 5-12-100 of the RLTO in count III. It further argued that counts IV and V and the class claims should be dismissed pursuant to section 2-619 of the Code because plaintiff's situation was unique as she was the only tenant who refused to allow defendant access to her unit to spray for insects and inspect for repairs.

¶ 21        On April 27, 2012, the circuit court ruled from the bench regarding defendant's motion to dismiss. The court dismissed counts I, II, and III, with prejudice, pursuant to section 2-619 of the Code, and dismissed counts IV and V, without prejudice, pursuant to section 2-615 of the Code.

¶ 22        Regarding count I, the court agreed with defendant's position that plaintiff had no cognizable claim that defendant failed to follow subsection 5-12-080(a)(3) regarding disclosure of the name and address of the bank where the security deposits were held because this section was not effective until August 27, 2010, three years after plaintiff signed the rental agreement. The court also agreed with defendant's argument as to count III that

plaintiff alleged a violation of subsection 5-12-100(a), but sought the wrong remedy in subsection 5-12-100(b), and subsection 5-12-100(a) did not provide for a civil remedy.

¶ 23 With respect to counts IV and V, the court again agreed with defendants' arguments that, according to the terms of the lease, plaintiff "inspected the apartment and approved its condition prior to moving into the unit," that plaintiff failed to allege that she gave defendant access to her unit at some point to make repairs, and that the lease was never renewed. The court further indicated that because plaintiff remained in the unit for more than four years and twice agreed to rent increases, she could not seek damages at this point for overpayment based on a deficient condition. Regarding plaintiff's class claims, the court also agreed with defendant that plaintiff's class claims were too narrow, individual, and fact-specific. The court gave plaintiff 28 days to amend counts IV and V.

¶ 24 The circuit court also entered a written order dismissing counts I, II, and III with prejudice pursuant to section 2-619 of the Code, dismissing counts IV and V without prejudice pursuant to section 2-615 of the Code, and granting plaintiff leave to amend counts IV and V by May 25, 2012. Plaintiff never amended her complaint. On June 14, 2012, the court entered an order in which it held, "[p]laintiff having elected to stand on her pleadings, this Honorable Court dismisses the remainder of Plaintiff's case with prejudice." Plaintiff filed a notice of appeal on June 28, 2012, from the April 27, 2012, order and the June 14, 2012, order.

¶ 25                                                   II. ANALYSIS

¶ 26 Pursuant to section 2-619.1 of the Code, a party may file a combined motion to dismiss involving both sections 2-615 and 2-619. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 13. "A section 2-615 motion to dismiss challenges the legal sufficiency of the nonmovant's pleadings whereas a section 2-619 motion to dismiss admits the legal sufficiency of the nonmovant's pleadings, but asserts certain defects or defenses." *Id.* "Under either section of the Code, our standard of review is *de novo*." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). "[T]his court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24.

¶ 27 With respect to a motion under section 2-615 of the Code, the court examines "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences which may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted." *Dratewska-Zator*, 2013 IL App (1st) 122699, ¶ 14. Any exhibits attached to the complaint "are considered part of the pleading for every purpose." *Id.* "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Ranjha v. BJBP Properties, Inc.*, 2013 IL App (1st) 122155, ¶ 9.

¶ 28    In a section 2-619 motion to dismiss, the moving party "admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The court views the pleadings and any supporting documentary evidence " 'in the light most favorable to the nonmoving party.' " *Id.* at 367-68 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)).

¶ 29    In addition, the interpretation of municipal ordinances presents a question of law, which we review *de novo* on appeal. *Ries v. City of Chicago*, 242 Ill. 2d 205, 216 (2011). "Municipal ordinances are interpreted using the same general rules of statutory interpretation." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 7 (2009).

> "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning. [Citation.] Where the language in the statute is clear and unambiguous, this court will apply the statute as written without resort to extrinsic aids of statutory construction. [Citation.]" *Landis*, 235 Ill. 2d at 6-7.

¶ 30    A statute must be viewed as a whole, and "words and phrases should not be construed in isolation, but should be interpreted in light of other relevant provisions of the statute." *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 81. However, if a statute is considered ambiguous, *i.e.*, it is susceptible to more than one reasonable interpretation, we may resort to extrinsic aids of statutory construction. *Ranjha*, 2013 IL App (1st) 122155, ¶ 10.

¶ 31    This case also involves examination of a written lease agreement, and our goal in analyzing the terms of the lease is to give effect to the intent of the parties, which must be ascertained from the lease alone where its language is unambiguous. *Nationwide Mutual Fire Insurance Co. v. T&N Master Builder & Renovators*, 2011 IL App (2d) 101143, ¶ 16. We must consider a lease as a whole, construing its provisions so that no part is rendered meaningless. *Id.*

¶ 32                          A. Dismissal of Count I
¶ 33                    1. Subsection 5-12-080(a)(3) of the RLTO
¶ 34    On appeal, plaintiff argues that the circuit court erred in dismissing her claim that defendant violated subsection 5-12-080(a)(3) by failing to disclose the name and address of the financial institution where her security deposit was being held. As defendant argued, and as the trial court found, this requirement mandating disclosure of the financial institution where a security deposit is held was added by amendment in 2010. Prior to this amendment and at the time plaintiff entered into the lease agreement in 2007, section 5-12-080(a) provided as follows:

> "A landlord shall hold all security deposits received by him in a federally insured interest-bearing account in a bank, savings and loan association or other financial institution located in the State of Illinois. A security deposit and interest due thereon

shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets of the landlord, and shall not be subject to the claims of any creditor of the landlord or of the landlord's successors in interest, including a foreclosing mortgagee or trustee in bankruptcy." Chicago Municipal Code § 5-12-080(a) (amended Mar. 31, 2004).

¶ 35    As subsequently amended, subsection (a)(3) now provides in relevant part:

"The name and address of the financial institution where the security deposit will be deposited shall be clearly and conspicuously disclosed in the written rental agreement signed by the tenant. If no written rental agreement is provided, the landlord shall, within 14 days of receipt of the security deposit, notify the tenant in writing of the name and address of the financial institution where the security deposit was deposited." Chicago Municipal Code § 5-12-080(a)(3) (amended July 28, 2010).

¶ 36    As such, the circuit court determined that defendant did not violate this section, as plaintiff signed the lease agreement prior to the amendment. Plaintiff relies on *Meyer v. Cohen*, 260 Ill. App. 3d 351 (1993), in arguing that this court should not apply different standards under the RLTO to some tenants and not others based on the fortuity of when they executed their respective leases.

¶ 37    In *Meyer*, the defendant argued that only four of the seven units in her complex were occupied at the time the plaintiff signed the lease and these unoccupied units did not constitute "dwelling units" as defined by the RLTO; thus, her complex contained "six units or less" and fell within an exception to the RLTO. *Meyer*, 260 Ill. App. 3d at 355-56. The defendant argued that the RLTO provision requiring landlords to attach a copy of the RLTO to the lease did not apply to her apartment complex. *Id.* at 354-55. The court disagreed with the defendant and concluded that the applicability of the RLTO did not depend on how many units happened to be occupied or how many leases were in effect at the time a particular lease was signed. *Id.* at 356. The court reasoned that the defendant's interpretation contradicted the purpose of the RLTO because it

"would lead to the anomalous result that a landlord would be subject to the ordinance with respect to some of his current tenants, but not others, in the same building, depending on the number of units occupied when a particular lease was signed. The city council could not have intended that tenants in the same building be afforded different rights and responsibilities under the law depending on the temporal fortuity of entering into their leases; we find such a 'last in time, first in right,' type of scheme to be completely incongruous with, and in derogation of, the express purpose of the ordinance." *Id.* at 356-57.

¶ 38    We find that *Meyer* does not control our decision in this case. In contrast to the current circumstances, *Meyer* did not involve an intervening change in the law. Defendant is not contending that a certain provision of the RLTO does not apply to its apartment complex based on the fortuity of how many units happened to be occupied at the time plaintiff signed her lease. Rather, defendant argues that the 2010 amendment adding section 5-12-080(a)(3) should not be applied here because it did not exist at the time that plaintiff signed the lease in

2007. "The general rule in this State is that absent express language to the contrary, an amendatory act is to be construed prospectively." *Meyer*, 260 Ill. App. 3d at 363.

¶ 39    As noted, the lease agreement was entered into on April 4, 2007, with the lease term to begin on April 1, 2007. "The accrual of a cause of action occurs when facts exist that authorize the bringing of the action." *Namur v. The Habitat Co.*, 294 Ill. App. 3d 1007, 1013 (1998) (finding that the plaintiffs' claim for commingling the security deposit accrued when it was deposited and their claim for failing to attach a summary of the RLTO accrued when the lease was offered to the plaintiffs). Thus, plaintiff's cause of action, if any, would have accrued when she initially provided the security deposit in 2007. However, the ordinance upon which she relies to state a violation was not enacted until July 28, 2010, and did not become effective until 30 days later on August 27, 2010. Accordingly, the trial court correctly determined that plaintiff could not state a claim and properly granted defendant's motion to dismiss pursuant to section 2-619 of the Code.

¶ 40                              2. Subsection 5-12-080(b) of the RLTO

¶ 41    On appeal, plaintiff asserts that defendant demanded, and she provided, an additional $10 in cash toward her security deposit on May 1, 2009, but defendant failed to give her a receipt, and that this claim fell within the two-year statute of limitations.[5]

¶ 42    Initially, we note that in dismissing count I as a whole, the circuit court only referred to defendant's argument regarding subsection 5-12-080(a)(3), without addressing plaintiff's claims under subsections 5-12-080(b) and (c). In its written order, the court indicated that it dismissed count I with prejudice pursuant to section 2-619 of the Code, without specifically referring to any particular subsection of 5-12-080 of the RLTO.

¶ 43    Further, we also note that in the circuit court, defendant argued that any of plaintiff's claims which accrued before March 28, 2009 (*i.e.*, two years before she filed her complaint on March 28, 2011), were barred by the statute of limitations. This encompassed the alleged failure to tender receipts for the initial $590 security deposit in 2007, the $40 key deposit in 2007, and the $10 payment toward her security deposit on May 1, 2008, and the failure to pay interest on her security deposit on March 31, 2008. The applicable statute of limitations on claims such as plaintiff's, brought under subsection 5-12-080 of the RLTO, is two years. *Namur*, 294 Ill. App. 3d at 1013. See 735 ILCS 5/13-202 (West 2008). This two-year time frame does not, however, encompass plaintiff's claims occurring after March 28, 2009. Because plaintiff brought suit on March 28, 2011, her claim regarding the failure to provide a receipt for the additional $10 she contributed toward her security deposit on May 1, 2009, or the failure to pay interest on March 31, 2009, would not be barred by the applicable two-year

_____

[5]We note that, in plaintiff's opening brief, it appears she mistakenly refers to count III instead of count I in her argument.

statute of limitations. The statute of limitations on these claims would have run on May 1, 2011, and March 31, 2011, respectively.[6]

¶ 44 Turning to subsection 5-12-080(b) of the RLTO, it provided at the time plaintiff entered into the initial lease:

"(b) Any landlord or landlord's agent who receives a security deposit from a tenant or prospective tenant shall give said tenant or prospective tenant at the time of receiving such security deposit a receipt indicating the amount of such security deposit, the name of the person receiving it and, in the case of the agent, the name of the landlord for whom such security deposit is received, the date on which it is received, and a description of the dwelling unit. The receipt shall be signed by the person receiving the security deposit. Failure to comply with this subsection shall entitle the tenant to immediate return of security deposit." Chicago Municipal Code § 5-12-080(b) (amended Mar. 31, 2004).[7]

¶ 45 Plaintiff argues that, because defendant failed to provide her with a receipt for the $10 additional security deposit that she provided on May 1, 2009, defendant violated subsection (b) and she is therefore entitled to twice the amount of the security deposit pursuant to section 5-12-080(f). Prior to being amended in 2010, subsection (f), which relates to remedies, provided:

"(f) If the landlord or landlord's agent fails to comply with any provision of Section 5-12-080(a)–(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code § 5-12-080(f) (amended Mar. 31, 2004).

¶ 46 On appeal, defendant argues that the parties' written lease constituted a receipt under subsection 5-12-080(b) because the lease indicated that plaintiff deposited a security deposit with the landlord and the lease contained the name of the landlord and a description of her unit. Plaintiff counters that defendant waived this argument by failing to raise it in the circuit

---

[6]We note that plaintiff does not present any argument on appeal concerning defendant's alleged failure to provide a receipt for her provision of the initial security deposit or "key deposit" in 2007, or for the additional $10 she alleged she gave defendant in 2008 toward her security deposit, or the alleged failure to pay interest in 2008. A party waives an issue if he or she fails to raise it on appeal. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 221 (1997). As discussed, these particular claims also were clearly barred by the statute of limitations because they accrued more than two years before plaintiff filed her March 28, 2011, lawsuit. *Namur*, 294 Ill. App. 3d at 1013. As such, the only issue we address is the payment of $10 on May 1, 2009, toward her security deposit, and the failure to pay interest on March 31, 2009. The payment of interest issue will be discussed further in the next section.

[7]Although subsection (b) was amended in 2010, the amendment is not relevant to any issue on appeal.

court and disagrees that the lease could constitute a receipt because it was not given to her at the time she paid the $10 in 2009 and did not contain the required information.

¶ 47    Defendant did not raise the argument that the lease constituted a receipt in its motion to dismiss or in its reply to plaintiff's response to its motion to dismiss. In general, a party may not raise an issue for the first time on appeal. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 306 (2000). "Employing the waiver rule against an appellee is particularly apt 'if the opposing party could have introduced evidence to contest or refute the assertions made on appeal, had he an opportunity to do so in the trial court' [citation]." *Evans v. United Bank of Illinois, N.A.*, 226 Ill. App. 3d 526, 531 (1992) (finding that the defendant waived a defense that she argued for the first time on appeal in support of affirming the circuit court's decision granting her motion for summary disposition, when the record contained no evidence regarding the defense and the plaintiff would have been prejudiced if the court were to consider the argument without the chance to develop evidence in the trial court (quoting *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989))).

¶ 48    On the other hand, this court has also held that "[t]he rule that a defense not raised in the trial court is regarded as waived and may not be raised for the first time in a reviewing court is a rule only insofar as an appellant is concerned; an appellee may urge any point in support of judgment on appeal, so long as a factual basis for such point was before the trial court." *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1099 (1989) (affirming the circuit court's decision to grant summary judgment in favor of the defendants based on a defense that the defendants argued for the first time on appeal).

¶ 49    Here, the factual basis underlying defendant's argument was before the court as the lease was an exhibit to plaintiff's amended complaint. The lease indicated that plaintiff provided $590 for the security deposit, it identified the specific apartment, it contained the name of the lessor (RTFX), and was signed by an agent of RTFX. Further, in paragraph five of the "LEASE AGREEMENT AND COVENANTS" section, it provided that "Tenant has deposited with Lessor the Security Deposit in the amount set forth above ***." Additionally, in paragraph 25, entitled "RECEIPT OF REQUIRED DOCUMENTS," it provided: "By execution of this Lease, Tenant confirms and acknowledges that Tenant has received the following documents from Lessor: A. Summaries of the Chicago Residential Landlord and Tenant Ordinance and Security Deposits; and B. A receipt for the Security Deposit, if any, as required by said Ordinance."

¶ 50    However, regardless of whether defendant waived its argument regarding the receipt, we would nonetheless conclude that the lease agreement signed in 2007 did not constitute a "receipt" under subsection 5-12-080(b) for purposes of the additional contribution of $10 toward the security deposit on May 1, 2009. Although the lease indicated the landlord/recipient information and the dwelling unit and it was signed by the person receiving the security deposit, it was lacking in other respects. The written lease was not given to plaintiff "at the time of receiving such security deposit" on May 1, 2009. Although the lease itself was dated, this was not the same date as when plaintiff provided the additional security deposit amount. Also, while the lease indicated the amount of the initial $590

deposit, it obviously did not indicate the amount of plaintiff's additional $10 contribution in 2009.

¶ 51　　Defendant also contends on appeal that the only remedy plaintiff would be entitled to for the alleged May 1, 2009, failure to provide a receipt is the return of the $10 security deposit pursuant to subsection 5-12-080(b), and not the remedy under subsection 5-12-080(f) of twice the amount of the security deposit.

¶ 52　　Turning to the language of the ordinance at issue, as noted, subsection (b) provides that "[f]ailure to comply with this subsection shall entitle the tenant to immediate return of security deposit." Chicago Municipal Code § 5-12-080(b)(1) (amended July 28, 2010). In addition, subsection (f) directs that if a landlord "fails to comply with *any* provision of Section 5-12-080(a)–(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081. *This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter.*" (Emphases added.) Chicago Municipal Code § 5-12-080(f) (amended July 28, 2010).

¶ 53　　Based on this language, we believe that the ordinance specifically provides for more than just the return of the security deposit as a remedy for failing to provide a receipt for the security deposit; it also allows for recovery of two times the security deposit plus interest. See *Solomon v. American National Bank & Trust Co.*, 243 Ill. App. 3d 132, 137 (1993) ("We note that the ordinance provides for the *return of the deposit and statutory damages* where the landlord fails to issue a proper receipt to a tenant or prospective tenant." (Emphasis in original and added.)).

¶ 54　　　　　　　　　　　3. Subsection 5-12-080(c) of the RLTO

¶ 55　　Plaintiff also argues on appeal that the circuit court improperly dismissed her claim that defendant failed to pay interest on her security deposit pursuant to subsection 5-12-080(c) within 30 days of the end of the 12-month rental period on March 31, 2009. Plaintiff asserts that the fact that defendant paid her $1 interest on January 2, 2010, and on January 29, 2010, did not remedy this error because the payments did not fall within 30 days of when the interest became due on March 31, 2009.

¶ 56　　Subsection 5-12-080(c) provides:

　　　　"(c) A landlord who holds a security deposit or prepaid rent pursuant to this section for more than six months shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate determined in accordance with Section 5-12-081 ***. The landlord shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due." Chicago Municipal Code § 5-12-080(c) (amended July 28, 2010).

¶ 57　　In examining subsections 5-12-080(c) and (f), our supreme court has concluded:

　　　　"A landlord's duty to comply with [section 5-12-080(f)] is absolute. If a landlord requires a security deposit, the landlord is required to pay the tenant interest on that

deposit. If he fails to do so, he is liable to the tenant for the damages specified in the ordinance. There are no exceptions. Where a statute is clear and unambiguous, as this one is, the court should not look to extrinsic aids for construction. \*\*\*

\*\*\* The purpose of the law is to help protect the rights of tenants with respect to their security deposits, including the right to receive interest. In most cases, the amount of interest landlords owe for security deposits is small, too small to warrant litigation against a landlord who refuses to abide by the law. Without the prospect of liability for significant additional damages, landlords would therefore have little incentive to meet their statutory obligations." *Lawrence v. Regent Realty Group*, *Inc.*, 197 Ill. 2d 1, 9-10 (2001).

See also *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260, 272 (1996) (finding that there was no *de minimis* exception regarding the prohibition on commingling security deposit funds where the landlord deposited two increases in the deposit in the amounts of $20 and $25 into its rent account).

¶ 58 Accordingly, defendant was required to strictly comply with the clear and unambiguous directives in the ordinance. Subsection 5-12-080(c) requires landlords to pay interest within 30 days after the end of each 12-month rental period. Plaintiff asserts that the parties' rental period ended on March 31, 2009, which would conform with the dates of their initial written rental agreement for the one-year lease that set the rental period from April 1 to March 31. Defendant does not contend that a different 12-month period is applicable. Thus, defendant was required to pay within 30 days of March 31, 2009, and its interest payments in 2010 or 2011 did not excuse its failure to pay interest within the prescribed time period.

¶ 59 Defendant also contends that plaintiff cannot prevail on this claim because she failed to provide notice pursuant to subsection 5-12-080(f)(2). Plaintiff maintains that she was not required to provide notice.

¶ 60 We note that subsection 5-12-080(f)(2) is arguably inapplicable to the instant circumstances because this provision relating to notice was not added until the amendment in 2010. As amended in 2010, this subsection now provides:

"(f)(1) Subject to section (f)(2), if the landlord fails to comply with any provision of Section 5-12-080(a)–(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter.

(2) If a landlord pays the interest on a security deposit or prepaid rent within the 30-day period provided for in subsection (c), or within the 45-day period provided for in subsection (d), whichever is applicable, but the amount of interest is deficient, the landlord shall not be liable for damages under subsection (f)(2) unless:

(A) the tenant gives written notice to the landlord that the amount of the interest returned was deficient; and

(B) within fourteen days of the receipt of the notice, the landlord fails to either:

(i) pay to the tenant the correct amount of interest due plus $50.00; or

(ii) provide to the tenant a written response which sets forth an explanation of how the interest paid was calculated." Chicago Municipal Code § 5-12-080(f) (amended July 28, 2010).

¶ 61     Nevertheless, based on the language concerning notice in subsection 5-12-080(f)(2), we conclude that it would only apply when the landlord paid interest within the prescribed time period, but paid a deficient amount. Thus, this subsection is only applicable where the landlord has actually paid *some* amount of interest within the prescribed time period, although the amount is incorrect. This differs from the circumstances in the present case, where plaintiff alleges that defendant failed to pay *any* interest at all within 30 days of March 31, 2009.

¶ 62                    4. Class Claims Under Section 5-12-080 of the RLTO

¶ 63     With respect to the class action component of plaintiff's count I claims, plaintiff maintains that even if she cannot individually maintain a claim under section 5-12-080(a)(3), she can still be a class representative because she alleged three different violations under section 5-12-080, only one of which fell under subsection (a)(3), and all three violations were redressable by the same civil remedy in subsection (f).

¶ 64     Although plaintiff moved to certify the class, the circuit court ruled only on defendant's motion to dismiss. "[A] trial court may rule upon a defendant's motion to dismiss before the question of class certification has been decided." *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 976 n.4 (1999). In order to adequately represent a class, the interest of the named party must be the same as those of the unnamed parties, and the " 'plaintiff must be a member of the class.' " *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 46 (quoting *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 999 (1991)).[8] "[T]here is no need to determine whether these prerequisites [for class certification] are met if, as a threshold matter, the record establishes that the plaintiff has not stated an actionable claim." *Id.* ¶ 47. That is, the named plaintiff " 'cannot adequately represent a class when the representative does not state a valid cause of action.' " *Id.* (quoting *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 560 (2009)). See also *Griffith v. Wilmette Harbor Ass'n*, 378 Ill. App. 3d 173, 184 (2007) ("In the context of a class action, if a purported representative plaintiff for a class action cannot maintain his individual claim against the defendant because of lack of standing or otherwise, then the class action claim cannot be

---

[8]For purposes of class certification, the proponent must establish four prerequisites set forth in section 2-801 of the Code. See 735 ILCS 5/2-801 (West 2008).

" '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.' " *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 45 (quoting *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 71-72 (2007)).

maintained. [Citation.] Accordingly, if a putative class action plaintiff has not suffered the injury that he alleges other members of the putative class have suffered, that purported plaintiff cannot represent the class.").

¶ 65  As previously discussed, plaintiff could not maintain her individual claim under subsection 5-12-080(a)(3). Accordingly, we conclude that the circuit court properly dismissed the class action component of her claim. However, as we previously stated, the trial court erred in dismissing plaintiff's individual claims under subsections 5-12-080(b) and (c) (that defendant failed to provide a receipt for the $10 she contributed toward her security deposit on May 1, 2009, and that defendant failed to pay interest at the end of the 12-month period on March 31, 2009). In order to withstand a motion to dismiss class allegations pursuant to section 2-615 of the Code, "[t]he plaintiff's complaint simply must contain allegations which implicate, or bring the complaint within, these prerequisites. It is enough that the factual allegations are sufficiently broad in scope to plead the possible existence of a class action claim under section 2-801." *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 453-54 (2004). In plaintiff's amended complaint, she alleged that she believed there were at least 52 tenants in the building and joinder would be impracticable, there were common questions of law and fact which predominated, she could fairly and adequately represent the class, and that she reasonably believed that some or all tenants who paid security deposits "suffered violations under RLTO Section 5-12-080." Accordingly, we conclude that the class component of those particular claims were improperly dismissed at this stage of the proceedings. We make no ruling, however, with respect to whether class certification is ultimately warranted in this case or whether plaintiff's motion for class certification should be granted.

¶ 66  In sum, we find that the circuit court appropriately dismissed plaintiff's claim under subsection 5-12-080(a)(3) of the RLTO. However, we find that the dismissal of plaintiff's claims pursuant to subsections (b) and (c) was in error.

¶ 67                B. Dismissal of Count III: Section 5-12-100 of the RLTO

¶ 68  On appeal, plaintiff contends that the circuit court erred in dismissing count III because subsection 5-12-100(b) provides for a private right of action when a violation of subsection 5-12-100(a) occurs. Defendant contends that the language regarding a private right of action in 100(b) applies only to subsection (b), not (a). Defendant also argues that even if a private right of action was available for plaintiff's subsection 5-12-100(a) claim, she failed to satisfy the notice requirement pursuant to section 5-12-090.

¶ 69  As sections 5-12-090, 5-12-100, and 5-12-110(a) are at issue here, we set forth each below in relevant part.

"5-12-090 Identification of owner and agents.

* * *

If the landlord fails to comply with this section, the tenant may terminate the rental agreement pursuant to the notice provisions of Section 5-12-110(a). If the landlord fails to comply with the requirements of this section after receipt of written

- 16 -

notice pursuant to Section 5-12-110(a), the tenant shall recover one month's rent or actual damages, whichever is greater." Chicago Municipal Code § 5-12-090 (amended Nov. 6, 1991).

"5-12-100 Notice of conditions affecting habitability.

Before a tenant initially enters into or renews a rental agreement for a dwelling unit, the landlord or any person authorized to enter into a rental agreement on his behalf shall disclose to the tenant in writing:

(a) Any code violations which have been cited by the City of Chicago during the previous 12 months for the dwelling unit and common areas and provide notice of the pendency of any code enforcement litigation or compliance board proceeding pursuant to Section 13-8-070 of the municipal code affecting the dwelling unit or common area. The notice shall provide the case number of the litigation and/or the identification number of the compliance board proceeding and a listing of any code violations cited.

(b) Any notice of intent by the City of Chicago or any utility provider to terminate water, gas, electrical or other utility service to the dwelling unit or common areas. The disclosure shall state the type of service to be terminated, the intended date of termination; and whether the termination will affect the dwelling unit, the common areas or both. A landlord shall be under a continuing obligation to provide disclosure of the information described in this subsection (b) throughout a tenancy. If a landlord violates this section, the tenant or prospective tenant shall be entitled to remedies described in Section 5-12-090." Chicago Municipal Code § 5-12-100 (amended Nov. 6, 1991).

"5-12-110 Tenant Remedies.

* * *

(a) *Noncompliance by Landlord.* If there is material noncompliance by the landlord with a rental agreement or with Section 5-12-070 either of which renders the premises not reasonably fit and habitable, the tenant under the rental agreement may deliver a written notice to the landlord specifying the acts and/or omissions constituting the material noncompliance and specifying that the rental agreement will terminate on a date not less than 14 days after receipt of the notice by the landlord, unless the material noncompliance is remedied by the landlord within the time period specified in the notice. If the material noncompliance is not remedied within the time period so specified in the notice, the rental agreement shall terminate, and the tenant shall deliver possession of the dwelling unit to the landlord within 30 days after the expiration of the time period specified in the notice. If possession shall not be so delivered, then the tenant's notice shall be deemed withdrawn and the lease shall remain in full force and effect. If the rental agreement is terminated, the landlord shall return all prepaid rent, security and interest recoverable by the tenant under Section 5-12-080." Chicago Municipal Code § 5-12-110 (amended Nov. 6, 1991).

¶ 70    During the pendency of this appeal, we granted plaintiff's motion to file as supplemental authority a recent opinion from this court, *Ranjha v. BJBP Properties, Inc*., 2013 IL App (1st) 122155. *Ranjha* involved interpretation of the same provisions of the RLTO at issue in the case at bar, that is, an alleged violation of section 5-12-100(a) for failing to disclose code violations before or at the time a lease was executed, and the remedies provided in sections 5-12-090 and 5-12-110(a). *Ranjha*, 2013 IL App (1st) 122155, ¶ 1. Similar to plaintiff here, the plaintiff tenant in *Ranjha* filed a class action complaint based on the alleged violation of subsection 5-12-100(a) for failure to disclose code violations and claimed the remedy of the greater of one month's rent or actual damages, in accordance with sections 5-12-100(b), 5-12-090, and 5-12-110. *Id.* ¶ 8. The circuit court dismissed the complaint after concluding that a tenant must surrender possession of the premises to the landlord in order to obtain the remedy set forth in section 5-12-090 of the RLTO. *Id.*

¶ 71    Our court indicated that the three provisions at issue should be read in the following order: "5-12-100; 5-12-090; and 5-12-110(a)." *Ranjha*, 2013 IL App (1st) 122155, ¶ 12.

> "[S]ection 5-12-100 provides that when a landlord violates that section, the tenant is entitled to the remedies set forth in section 5-12-090. Section 5-12-090 permits a tenant to terminate the lease pursuant to the written notice provisions of section 5-12-110(a), and it also provides that a tenant shall recover the greater of one month's rent or actual damages if a landlord fails to comply with its requirements after receiving the written notice provided for in section 5-12-110(a)." *Ranjha*, 2013 IL App (1st) 122155, ¶ 11.

¶ 72    Turning to section 5-12-090, the court noted that it provided for two remedies, "either lease termination or monetary damages in the amount of one month's rent or actual damages, whichever is greater," and that the tenant "must satisfy the notice requirements set forth in section 5-12-110(a)." *Ranjha*, 2013 IL App (1st) 122155, ¶ 13. The court indicated that the notice provision in section 5-12-110(a) provided that the tenant " 'may deliver a written notice to the landlord specifying the acts and/or omissions constituting the material noncompliance and specifying that the rental agreement will terminate on a date not less than 14 days after receipt of the notice by the landlord,' " unless the material noncompliance was remedied. (Emphasis omitted.) *Id.* (quoting Chicago Municipal Code § 5-12-110(a) (eff. Nov. 6, 1991)). The court made clear that written notice was required when a tenant sought the remedy of the greater of one month's rent or actual damages for a violation of subsection 5-12-100(a): "Without dispute, a tenant must provide written notice to the landlord to recover the remedy of one month's rent or actual damages ***." *Id.* ¶ 15.

¶ 73    However, observing that the language regarding written notice in section 5-12-110(a) only referred to the remedy of lease termination and not monetary damages, the court determined that a liberal construction of section 5-12-110(a) was appropriate "as requiring a tenant to inform the landlord what the material noncompliance was and specify the remedy that he is seeking from the two remedies provided for in section 5-12-090." *Ranjha*, 2013 IL App (1st) 122155, ¶ 18. In effect, the court interpreted section 5-12-110(a) to read: " 'the tenant under the rental agreement may deliver a written notice to the landlord *specifying the acts and/or omissions constituting the material noncompliance and specifying that the tenant*

*shall recover one month's rent or actual damages, whichever is greater*, on a date not less than 14 days after receipt of the notice by the landlord, unless the material noncompliance is remedied by the landlord within the time period specified in the notice.' " (Emphasis in original.) *Id.* (quoting Chicago Municipal Code § 5-12-110 (eff. Nov. 6, 1991)). If the landlord failed to remedy the noncompliance within the time period specified in the notice, the tenant would be entitled to the remedy specified in that notice. *Id.* Thus, "if a tenant seeks the remedy of one month's rent or actual damages, whichever is greater, and specifies that remedy in the written notice, then termination of the lease and delivery of premises are not required." *Id.* The court indicated that this interpretation was in line with the purpose of the RLTO, which aims to improve rental housing. *Id.* ¶ 19. In reversing the circuit court's decision, this court held that the tenant was not required to terminate the lease and surrender the premises in order to recover the greater of one month's rent or actual damages "when a landlord, after receiving the required statutory written notice, has failed to provide a tenant with notice of Code violations in accordance with section 5-12-100." *Id.* ¶ 20.

¶ 74 Based on *Ranjha*, the remedy provision set forth in subsection 5-12-100(b) is applicable to plaintiff's claim in the present case that defendant violated subsection 5-12-100(a) by failing to disclose code violations or code enforcement litigation in the 12 months before the lease was executed. Although *Ranjha* did not involve the specific contention of whether the remedy in subsection (b) is applicable to violations of subsection (a), the court's holding encompassed this issue: "In sum, termination of the lease and surrender of the premises to the landlord are not required to recover the greater of one month's rent or actual damages when a landlord, after receiving the required statutory written notice, has failed to provide a tenant with *notice of Code violations* in accordance with section 5-12-100." (Emphasis added.) *Ranjha*, 2013 IL App (1st) 122155, ¶ 20. We find no reason to depart from this analysis.

¶ 75 This conclusion is buttressed by our decision in *Krawczyk v. Livaditis*, 366 Ill. App. 3d 375, 378 (2006), where the plaintiff argued that the circuit court failed to award separate damages for a violation of section 5-12-100 based on the defendant's failure to disclose citations from the City of Chicago and a notice from the gas company regarding discontinuing service to the building. The court stated that "plaintiffs are correct that the trial court erred in failing to award separate damages for the violation of section 5-12-100 (requiring disclosure to tenants regarding legal proceedings, cutoff of utilities), as the ordinance specifically states that such violations shall entitle the tenant to remedies under section 5-12-090." *Id.* Thus, *Krawczyk* dictates that the remedy in section 5-12-090 is available for violations of section 5-12-100, including both subsections (a) (for disclosure of code violations and proceedings) and (b) (for disclosure of a notice of intent to terminate a utility service).

¶ 76 We also find persuasive plaintiff's argument that the language of section 5-12-100 draws a distinction between "section" and "subsection." The Chicago Municipal Code, which includes the RLTO, specifies: "Each section number of this Code shall consist of three component parts separated by dashes. The figure before the first dash shall refer to the title number; the figure following the first dash shall refer to the position of the chapter within a title; and the figure following the second dash shall refer to the position of the section within

its chapter." Chicago Municipal Code § 1-4-080 (added June 27, 1990). Thus, in the ordinance at issue, "5" indicates the title number, "12" refers to the chapter within the title, and "100" signifies the section within the chapter. Further divisions within the section would therefore be "subsections." This is supported by the dictionary definition of the prefix "sub-," which is defined as "[s]ubordinate; secondary" or "subdivision." American Heritage Dictionary 1210 (2d coll. ed. 1985).[9]

¶ 77　As stated, the last two sentences of subsection 5-12-100(b) provide: "A landlord shall be under a continuing obligation to provide disclosure of the information described in this *subsection* (b) throughout a tenancy. If a landlord violates this *section*, the tenant or prospective tenant shall be entitled to remedies described in Section 5-12-090." (Emphases added.) Chicago Municipal Code § 5-12-100(b) (amended Nov. 6, 1991). The word "section" in 5-12-100(b), "[i]f a landlord violates this section," refers to the section as a whole. The ordinance also specifically uses the term "subsection" in 5-12-100(b), "the information described in this *subsection* (b)." That the language of the ordinance draws a distinction between a "section" and a "subsection" provides further support for plaintiff's argument that the phrase "violates this *section*" refers to the entire section 5-12-100, and not merely subsection (b).

¶ 78　Even though we conclude that the remedy referred to in subsection 5-12-100(b) is available for a violation based on subsection 5-12-100(a), pursuant to *Ranjha*, plaintiff was also required to provide notice to defendant and specify which remedy she sought, *i.e.*, termination of the lease or the greater of one month's rent or actual damages. *Ranjha*, 2013 IL App (1st) 122155, ¶¶ 15, 20. Plaintiff argues that, if notice was required, she provided proper notice to defendant in her attorney's February 28, 2011, letter, requesting that defendant "disclose as it relates to the above-captioned property all building code violations [and] all code enforcement proceedings." The letter requested "the courtesy of your response on or before March 14, 2011."

¶ 79　However, the letter was insufficient to provide notice as required by *Ranjha*. The letter did not specify " 'the acts and/or omissions constituting the material noncompliance' " or " 'specify[ ] that the tenant shall recover one month's rent or actual damages, whichever is greater, on a date not less than 14 days after receipt of the notice by the landlord, unless the material noncompliance is remedied by the landlord within the time period specified in the notice.' " (Emphasis omitted.) *Ranjha*, 2013 IL App (1st) 122155, ¶ 18 (quoting Chicago Municipal Ordinance § 5-12-110(a) (eff. Nov. 6, 1991). Because the letter did not specify what constituted the material noncompliance, specify the damages or remedy sought by plaintiff, or the time period in which the landlord had to remedy the noncompliance, it was insufficient to constitute a notice. Although the circuit court did not address these grounds for dismissal, we may affirm the circuit court's decision for any reason on appeal. *Coghlan*, 2013 IL App (1st) 120891, ¶ 24. Thus, we find that the circuit court properly dismissed count III of plaintiff's amended complaint.

---

[9]This court may look to "a dictionary to give the terms their ordinary and popularly understood meaning." *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 29.

¶ 80   In ruling, we further note that even if plaintiff's claim would not fail based on inadequate notice, we nevertheless agree with defendant's alternative argument that plaintiff failed to allege that defendant did not disclose code violations occurring within the 12-month period before she signed her lease on April 4, 2007. Plaintiff pleaded in her complaint that defendant was cited with four code violations on May 4, 2007, and that there were two code enforcement proceedings in 2009. Plaintiff also indicated that during her entire tenancy, the property was cited for a total of approximately 32 code violations. However, none of these allegations occurred within the 12-month period *before* she executed the lease, and therefore they did not constitute violations of subsection 5-12-100(a).

¶ 81   Moreover, after the expiration of the one-year lease term, the lease was never renewed. The lease provided that it began on April 1, 2007, and ended on March 31, 2008. In paragraph 15 of the written lease, entitled "TERMINATION AND RETURN OF POSSESSION," the lease agreement provided in relevant part:

> "B. Tenant agrees that in the event Tenant fails to vacate the Apartment upon termination of this Lease or Tenant's right of possession that:
>
> (1) Tenant shall pay as liquidated damages for the entire time that possession is withheld a sum equal to three times the amount of rent herein reserved, pro rated per day of such withholding, or Lessor's actual damages if same are ascertainable; or
>
> (2) Lessor, at his sole option, may, upon giving Tenant written notice, extend the terms of this Lease for a like period of time not to exceed one year at such rent as Lessor has stated prior to said termination date; or
>
> (3) If Lessor fails to notify Tenant within 45 days of said termination date of Lessor's election under either (1) or (2), Tenant's continued occupancy shall be for a month-to-month term.
>
> (4) No action or non-action by Lessor except as herein provided, and except as expressly provided otherwise in the Chicago Residential Landlord and Tenant Ordinance, shall operate as a waiver of Lessor's right to terminate this Lease or Tenant's right of possession, nor operate to extend the Term hereof."

¶ 82   "A tenant who remains in possession after his or her lease has expired becomes a tenant at sufferance. [Citation.] At the landlord's sole option, a tenant at sufferance may be evicted as a trespasser or treated as a holdover tenant." *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1027 (2005). However, when a holdover tenancy is not created, a month-to-month tenancy may result from the parties' conduct, such as accepting monthly rental payments. *Id.* "Both a holdover tenancy and a month-to-month tenancy are governed by the terms of the original lease. [Citation.] However, a holdover tenancy lasts as long as the original lease term, while a month-to-month tenancy can last indefinitely, although it can be terminated on 30 days' notice. [Citation.]" *Id.* Additionally, "a tenancy from month to month is a single tenancy, continuous and uninterrupted until so terminated," and therefore a renewal does not occur "at the beginning of each month." *Wagner v. Kepler*, 411 Ill. 368, 377 (1951).

¶ 83   In the present case, the written lease agreement provided that, after the expiration of the one-year term of the lease, defendant had the option of treating plaintiff as a tenant at

sufferance, giving plaintiff notice that it would extend the term of the lease for a "like period of time," or, if defendant did not notify plaintiff within 45 days of the lease termination date that it elected either of those two options, plaintiff's occupancy would continue on a "month-to-month term." Accordingly, after the expiration of the one-year term on March 31, 2008, plaintiff's tenancy became a month-to-month tenancy. As the lease was not renewed, defendant was not under an obligation pursuant to section 5-12-100(a) to disclose code violations or proceedings which occurred subsequent to the execution of her initial lease.

¶ 84    Because plaintiff has failed to plead an individual claim for a violation of section 5-12-100, her class claim must also fail for lack of a class representative pursuant to section 2-619 of the Code. *Uesco Industries*, 2013 IL App (1st) 112566, ¶¶ 47-48. The circuit court properly dismissed both plaintiff's individual and class claims under count III.

¶ 85                              C. Dismissal of Counts IV and V

¶ 86    Plaintiff also challenges the circuit court's dismissal of counts IV and V pursuant to section 2-615 of the Code. In count IV, plaintiff alleged that defendant violated section 5-12-070 of the RLTO by failing to maintain the premises "in compliance with all applicable provisions of the municipal code" and failing to "promptly make any and all repairs necessary." Chicago Municipal Code § 5-12-070 (amended Nov. 6, 1991). Similarly, in count V, plaintiff alleged that defendant's failure to correct these conditions breached the warranty of habitability implied in all residential rental leases, and that she and like class members suffered damages by paying more in rent than the apartments were worth.

¶ 87    As stated, when reviewing the sufficiency of a complaint pursuant to section 2-615 of the Code, we accept as true all well-pleaded facts and any reasonable inference that can be drawn from those facts. *Dratewska-Zator*, 2013 IL App (1st) 122699, ¶ 14. "We have repeatedly stated, however, that Illinois is a fact-pleading jurisdiction." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "While the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions [citation]." *Id.* at 429-30.

> "Conclusions of fact are insufficient to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. [Citation.] Rather, under Illinois fact pleading, the pleader is required to set out ultimate facts that support his or her cause of action. [Citation.]" *Coghlan*, 2013 IL App (1st) 120891, ¶ 22.

¶ 88    "In the absence of supporting facts, the general allegations in [a complaint] are mere conclusions. [Citation.] Conclusory allegations of fact or law are not admitted in a section 2-615 motion. [Citation.] If, after deleting such, there are not sufficient facts alleged to support a claim, the pleading is properly stricken." *Shaker & Associates, Inc. v. Medical Technologies Group, Ltd.*, 315 Ill. App. 3d 126, 133-34 (2000).

¶ 89    We conclude that the circuit court properly granted defendant's motion to dismiss counts IV and V and the related class claims pursuant to section 2-615 of the Code. Plaintiff's amended complaint makes merely general, conclusory allegations that numerous "unsafe,

unsanitary, and uninhabitable conditions" existed "throughout" her tenancy. She does not specify where or when such conditions existed. Plaintiff also failed to allege that she provided defendant access to her apartment to remedy these alleged conditions. " '[T]here, of course, must be notice of the alleged defects given by the tenant to the landlord and the landlord must have had a reasonable time within which to correct the alleged deficiencies.' " (Emphasis omitted.) *Abram v. Litman*, 150 Ill. App. 3d 174, 176 (1986) (quoting *Glasoe v. Trinkle*, 107 Ill. 2d 1, 14 (1985)). Although plaintiff was given an opportunity to amend her amended complaint, she did not do so.

¶ 90                                   III. CONCLUSION

¶ 91        For the reasons set forth above, we reverse the circuit court's dismissal of count I as it relates to plaintiff's claims under subsections 5-12-080(b) and (c). In all other respects, we affirm the circuit court's orders dismissing the remainder of plaintiff's claims.

¶ 92        Affirmed in part and reversed and remanded in part.